on behalf of the appellant, Mr. George Cramer. Good morning, Your Honors. Good morning. May it please the Court, I'd like to reserve two minutes of my time for rebuttal arguments. Just watch the clock. Certainly, Your Honor. Your Honor, the issues presented in the case of Mr. Cramer are, first, that there is insufficient evidence in order to sustain his conviction, and secondly, that prior uncharged conduct was improperly admitted at trial. Looking first at the insufficiency of the evidence argument, Your Honors, this Court comes up from a magistrate decision which determined that it was criminally liable on the part of Mr. Cramer to avail himself of the local open-range law which allows his cattle to lawfully graze on 100,000 acres of open land in Lassen County. Yeah, but we're talking about BLM lands here, aren't we? I'm sorry? Aren't we talking about government-owned lands, BLM lands? That's correct, Your Honor. And I gather your client never, ever sought a grazing permit? Your Honor, actually, the testimony that came out at trial was that grazing permits were not available. At page 11 of the excerpts of record submitted by Mr. Cramer, the counsel for government at trial was very candid in stating that grazing permits were not being issued in that area by BLM at the time. And he was aware of grazing permits, certainly. However, he was unable to apply and obtain one. Additionally, it was mentioned that he could perhaps have worked out some sort of economic arrangement with another person who had a permit. However, the magistrate judge found specifically that it was unclear at trial whether or not that was actually pursued or not. And because it was unclear, I think that the Semenza standard has not been met. The Semenza decision, of course, stating that there has to be a willful failure to act in the face of a clear opportunity. Well, with respect to willfulness, what about all of the prior notices that he got, which he understood and admitted to? Can't the trial judge take that into account? Yes, he can't take it into account. I think it does establish notice and knowledge of the trespass, Your Honor. However, willfulness is a higher standard. And there's a similar case that came out of the Eastern Court. Ignoring notice after notice after notice and still going ahead? Well, that's the difference, though, Your Honor. I don't think he was ignoring the notice. In fact, the evidence established at trial indicates that he was intentionally trying to prevent these cattle. I mean, ultimately, isn't the question whether, knowing that, as he said he knew, that it was basically impossible to keep his cattle and horses on his land, given the fact that the fences were breaking down and people were leaving gates open and so on, does he, under those circumstances, have the right to continue to graze his animals on the 100,000 acres rather than trying to close them in? Your Honor, his obligation is not to willfully allow the livestock to graze on. And if you're letting them out in a place where you know they're going to get on BLM land and you do it over and over again and to the degree that your livestock is getting confiscated because of it, then isn't he willfully allowing them to get on the land because he knows for sure they're going to get on the land? That's basically his testimony. No, Your Honor, because at the same time, he was taking affirmative actions to try and prevent them from getting on the land. But he also said it was impossible. He said it couldn't be done. But specifically, Your Honor, page 135, he built a fence with the cooperation of BLM. He made numerous references to him repairing fences, mending them, showing Federal officials. But wasn't his ultimate testimony that it couldn't be done, particularly because in the last couple years there had been this gate that was always left open and he didn't know who was leaving it open, but it was always open? Your Honor, his ultimate testimony was one of resignation and being frustrated with the rub between the open-range local law and the fact that BLM had unfenced land directly next to that open-range land where he is now living. So therefore, it was he said it was uneconomic for him to fence in his land, and it was his testimony that apparently you're not allowed, whether economically or uneconomically, to let your cattle and horses go on BLM land when you've been told repeatedly not to. But I think his testimony that it was practically impossible doesn't prove, it doesn't provide sufficient evidence that he willfully failed to act in the face of a clear opportunity to do so. But when nobody could have done, he could have fenced him in himself on his property. Now, he also said it wasn't economic and therefore he was getting rid of all of his livestock, but that isn't really the question. It was doable. It was just doable at a price. This, Your Honor. Isn't it possible, counsel, that the magistrate judge didn't believe your client, that he, that the testimony was not compelling, and he said this is all a cover for what you were really doing, which was intentionally, willfully allowing your livestock to get into BLM lands? Well, actually, Your Honor, the testimony that he built a fence, that he notified Federal employees of broken fences and mended them, that all came out through the government's case-in-chief, through their own witnesses that they put on trial or that, excuse me, they put on the stand. Specifically at page 134, Mr. Kramer went out to areas with Federal employees, showed them where the fences needed to be mended. Sure. But there was also, outweighing that, 95 percent of the government's case was showing how he was repeatedly offending over and over again. And then Mr. Kramer took the stand. That was the time for him to show to the trier of fact that it was not willful, that it was inadvertent, it was caused by other events which were beyond his control, and the magistrate judge didn't believe him. However, we have to look at the evidence in the trial and whether or not the government would prove that he failed to act in the face of clear opportunity to do so. And I would submit that he was taking many actions to prevent his livestock from getting onto that land, that he had every motivation to do so because he had suffered substantial economic loss to the tune of $24,000 as the result of previous forfeitures of his livestock, and that in order to get to willfulness, we have to show something more than just that it happened again and again. As Tom Cannon testified, again, a government witness, an employee of BLM, cattle go where they please. They have a mind of their own. And therefore, that's an intervening factor in what was going on here. That was not simply Mr. Kramer willfully intending for these livestock to go. And we have to take into account that. Kagan is there any reason legally or otherwise, any legally cognizable reason why BLM had a responsibility itself to keep its land fenced? No, there's not, Your Honor. However, I think it is somewhat offensive that a person could be held criminally liable for not fencing in their own land when BLM has the resources to keep these livestock off and could have fenced it. But isn't the liability not for failing to fence in your own land, but you're allowing cattle to go on the BLM land? That's the liability, isn't it? Yes, and the problem comes in when we define allow under the Symenza Standard, which is a willful failure to act in the face of clear opportunity. There weren't clear opportunities presented at trial. The magistrate judge, in a sense, created these artificial opportunities that, oh, he could have fenced in land on his own property or he could have entered into some sort of economic arrangement with someone else. But there is no evidence. Counsel, you're down to two minutes. You indicated you wanted to reserve. You may do so. No, I'll reserve the rest of my time. Thank you, Your Honor. This won't count against your time, Mr. Fleming, but I noticed in the brief that was filed here, it was filed by Mr. John Ballas with certified law students from McGeorge. Are any of those people in the room? John Ballas is present. He's seated at a council table with me. One of the students is also here present. Very well. Thank you. Thank you very much. Mr. Fleming was also a student at the time. Oh, he is. Oh, very well. Very well. Thank you very much. We'll hear from the government. Thank you, Your Honor. Michelle Beckwith, appearing on behalf of the United States. The primary issue in this case is whether or not the magistrate judge acted rationally when he found the defendant guilty of grazing his livestock on BLM land on the three occasions listed in this. Why is it rationally? It's not a beyond reasonable doubt standard? It is, Your Honor. I'm referencing this Court's decision, the en banc decision in Nevels, and reviewing the sufficiency of the evidence, the standard is whether or not any rational trier of fact could have found the defendant guilty beyond reasonable doubt. Beyond reasonable doubt, but it still has a beyond reasonable doubt. Yes, Your Honor. In this case, not only did the magistrate judge act rationally in making this finding, there is abundant evidence to support this conclusion. Furthermore, in referencing the specific standard in Semenza, there is, in fact, clear evidence that there were opportunities for the defendant to prevent his cattle or horses from grazing on BLM land. And that's found in the defendant's own testimony and the testimony of his own witness, Joanne Simas. She testified that during the period she lived with the defendant from 2002 to 2007, they were able to keep the livestock off of BLM land when they were actively managing the livestock. They did so by riding around on horseback, walking around on foot, or using four-wheel drive vehicles in the winter months. Additionally, there's evidence that during that time and during the time of the offenses, the defendant had hired someone to help him keep an eye on his livestock. And is there any record on what happened with other livestock in the area? I mean, was this an overall problem or was it just with regard to Mr. Kramer? Your Honor, I believe the record evidence establishes that in this particular area, the problem was really solely with respect to Mr. Kramer. It was a very large area of land that he owned, about 1,000 acres, and it abutted BLM land, specifically part of which was the winter range allotment. And contrary to defense counsel's assertions, that winter range allotment actually was permitted out to another owner during the times in question. And that was, I believe, at least two of the three violations did occur on the winter range allotment. So not only was the defendant violating the BLM laws, but he was disrespecting the rights of people who had acted lawfully and obtained a permit and paid for it, just by letting his cattle graze on this land. And he knew, as Your Honor I think referenced before, he knew that they were going to do that. He knew that they did that, and it had been happening since 1998. And in fact, the BLM actually tried to work with him over a long period of time before imposing criminal sanctions. I believe in the — I think it was Mr. Cooper's testimony that in the beginning, they would just notify him of the trespasses and try to tell him, don't do this. And then they eventually began taking more aggressive civil enforcement measures, and that resulted in the impoundment of the cattle. And then eventually in 2009, after so many years of this, they resorted to criminal liabilities. So he had sufficient notice that this was coming. Does your office do many of these prosecutions for the BLM? Your Honor, I'm not sure. There is, at least in our office in Sacramento, there's a unit — at least it used to be a unit of certified law students who are responsible for prosecuting misdemeanor offenses. Now we have several special assistant U.S. attorneys who are doing that. But I get the impression that Mr. Kramer was at frustration to the law enforcement agencies who went to the U.S. attorney and said, we have to make an example out of him. I'm not sure that that's the case, Your Honor. I think the record shows that the BLM personnel were actually quite reasonable and patient with Mr. Kramer over this long period of time. And it was only after 10 or more years that they finally took criminal action. And even then, there was an incident with the horses that led to the criminal contempt charge being added, correct? That's correct, Your Honor. And as you'll note from the record, that the magistrate judge did not find him guilty of that, and that appears to be appropriate, even though there's the willful standard under the regulations. The willfulness standard for criminal contempt is much higher. It's almost double willfulness, and the magistrate judge noted that. And I don't think that's an issue on appeal. Counsel, you heard Mr. Fleming's reference to either the nonavailability or the difficulty of obtaining a permit. Do you remember Mr. Fleming's comment? What is your response? Well, I don't think that's true with respect to permits were available, at least with respect to the winter range allotment. However, it was owned at the time relevant to this case by someone else. So I don't think he could have gotten another permit and shared that space with her. With respect to other land, other than the winter range allotment, I'm not sure whether there was a permit available. Very well. Anything further? Your Honor, I would also just state for the record that the government believes that the magistrate judge did not abuse its discretion in admitting the evidence under 404b. I noted in my papers that he actually made an alternative finding for the admission of that evidence, one under the inextricably intertwined theory and one under the inextricably intertwined theory. And I think that that would be 404b. Are you defending only the second? I'm sorry? Are you defending only the second? I'm defending both, Your Honor. But I think that the more appropriate basis for admission was to show a lack of mistake. And that evidence was directly provided. Lack of good faith? Is that an element of the crime? No, I'm sorry. The absence of a mistake on the part of the defendant. His intent was directly an issue. That's an element of the crime. And he put it an issue by testifying. And under the en banc decision of Curtin, that the only way that it could have been excluded under those circumstances was under Rule 403. And I think the case law is clear that in a bench trial that's Rule 403 is generally not an appropriate basis for exclusion. Unless the Court has further questions, I'll submit. No further questions. Thank you, counsel. Mr. Fleming, you have some reserve time. May it please the Court, I'd like to address the second issue. Now, United States v. Vega specifically requires that reasonable notice be provided in advance of trial. The defense made requests on July 20, 2009, and September 20, excuse me, September 30, 2009, specifically for 404B material, and was not provided with that intent to introduce the specific acts at trial. Well, you got the material. The problem was that, from your point of view, that you didn't get specifically which ones were going to come in. That's correct. And which one didn't? Was there a lot that didn't come in? Your Honor, I'm not entirely aware, candidly. However, what did happen was a voluminous amount of discovery, 471 pages. Right, but a voluminous amount of material was actually admitted. So unless there's some major disconnect between what the discovery was and what was admitted, then you don't really have a problem. Well, there is a problem in the sense that there wasn't fair notices to the specific charges, and when we're talking about 471 pages, Ms. Cusick could try to turn it in. Well, it depends. I mean, if in fact they the intent was and it was carried out to put in most or all of it, then there wasn't a problem. But there was no notice of that intent until November 12th, just a few days before the trial actually took place. And so in order to investigate this, which took place, you know, three and a half hours out of Sacramento, up by the Nevada border, in order to subpoena witnesses, it was necessary for the defense to prepare to have the notice of which specific instances were going to come in. Is there any case law supporting the proposition that providing discovery of prior acts is not a sufficient way to provide notice? Yes, Your Honor. The D.C. Circuit Court case of or excuse me, Circuit Court, yes, United States v. Spinner. Citation is 152F3D950, which stated that the mere provision of discovery is not enough to satisfy the notice requirements of 404B, which are important. But then there was specific notice after that. There was on November 12th, and the question is whether or not that's reasonable. Does five days before trial give enough notice for the defense to adequately prepare their defense? All right. Thank you, counsel. Your time has expired. Thank you, Your Honors. The case just argued will be submitted. And before Professor Ballas and Mr. Fleming leave the room, I'd like to commend McGeorge Law School for its program and for a case very nicely briefed and argued. Thank you. The next case for oral argument will be United States v. Solorio.
judges: Lasnik, O'scannlain, Berzon